UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **D-6, MANJARO JOHNSON**, <br><br> Defendant. | 2:17-cr-20489 <br><br> HON. TERRENCE G. BERG <br><br> **ORDER DENYING MOTION TO REVOKE DETENTION ORDER** |

Manjaro Johnson requests that the Court—because of the COVID-19 pandemic—revoke the Magistrate Judge's order of detention and release him on bond pending sentencing. Johnson urges that he is particularly vulnerable to viral illness because he suffers from bronchial asthma. Earlier this year, he pled guilty to conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841 (a)(1). He is being held at the Clare County Jail, in Harrison, Michigan pending his June 4, 2020 sentencing. As of the date of this Order, there have been no reports of any prisoner at that facility being diagnosed with COVID-19. Although the Court recognizes that Johnson's asthma places him in a higher-risk category for the virus, in weighing that factor against all other relevant considerations, the Court concludes that the evidence does not support releasing the Defendant and revoking the order of detention. For example, the Court finds that allowing Johnson to travel across the

1

country to stay with family in Victorville, California until sentencing is unlikely to mitigate his risk of infection or serious illness and could possibly create a heightened risk of infection for him or for others. In contrast, the facility where he is being held has no diagnosed cases of COVID-19 and the record before the Court shows that staff are taking reasonable precautions to prevent or limit the spread of COVID-19 among detainees and staff. Finally, Johnson has not presented the Court with any new information that warrants reexamining the Magistrate Judge's finding that he poses both a flight risk, and a potential danger to the community. The motion for revocation of the detention order (ECF No. 348) will be denied.

## BACKGROUND

According to the criminal complaint in this case, Johnson engaged in a conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1). ECF No. 1 (Apr. 17, 2018 Crim. Compl.). The supporting affidavit sworn by a Special Agent of the Drug Enforcement Administration asserts that Johnson was involved in a narcotics distribution conspiracy in the Eastern District of Michigan from at least January 2017 through April 13, 2018. ECF No. 1, PageID.1040–41.

After a detention hearing, Magistrate Judge Elizabeth A. Stafford ordered that Johnson remain in custody pending trial. *See* ECF No. 9 (May 2, 2018 Detention Order). The Magistrate Judge based that decision on her assessment that no condition of release could reasonably assure

the safety of the community or defendant's appearance in court. ECF No. 9, PageID.1066. Additionally, Magistrate Judge Stafford observed that the evidence against Johnson was "strong," that he would be subject to a lengthy period of incarceration if convicted, and that he lacks significant community or family ties in this district. ECF No. 9, PageID.1066–67. Indeed, it appears that Johnson has no close family in the Detroit area and instead asks the Court to allow him to travel to California so that he can stay with family there until his sentencing date. ECF No. 348.

On February 6, 2020, Johnson entered a Rule 11 plea agreement pleading guilty to Count One of the Seventh Superseding Indictment, which charged him with conspiracy to distribute controlled substances, as prohibited by 21 U.S.C. §§ 846, 841(a)(1). ECF No. 337. The elements of Count One are that: (1) two or more people conspired, or agreed to possess with intent to distribute, controlled substances of "[a]t least one kilogram of heroin, at least 5 kilograms of cocaine, and at least 400 grams of fentanyl"; and (2) the defendant knowingly and voluntarily joined the conspiracy. ECF No. 337, PageID.2209. *See* 21 U.S.C. §§ 846, 841(a)(1). The plea agreement describes the factual basis for Johnson's guilty plea. In that document, Johnson acknowledges that he "knowingly and voluntarily conspire[d] with others, to distribute controlled substances." ECF No. 337, PageID.2209. Based on Johnson's individual conduct and conduct of conspirators that was "reasonably foreseeable" to him, the plea agreement admits Johnson's responsibility for 13 kilograms of fentanyl,

3

21 kilograms of a mixture of fentanyl and heroin, more than 1/2 kilogram of tramadol, 15 kilograms of cocaine, and 90 grams of heroin seized by law enforcement. *See* ECF No. 337, PageID.2210.

Sentencing is currently set for June 4, 2020. *See* ECF No. 338. Johnson faces a mandatory minimum sentence of 10 years and an agreed-upon guideline range of 210–216 months. ECF No. 337, PageID.2211; ECF No. 354, PageID.2369 (Gov't Resp. Br.). As of the date of this order, no presentencing report is available.

## DISCUSSION

District courts may review detention orders issued by magistrate judges pursuant to 18 U.S.C. § 3145(b). Because Johnson has already pled guilty to a federal offense and is awaiting sentencing, his motion is governed by 18 U.S.C. § 3143, a provision of the Bail Reform Act applying to decisions of release or detention of a defendant pending sentencing or appeal. That statute provides that judicial officers should order detention of a defendant who has pled guilty to an offense requiring a term of incarceration "*unless* the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a). Johnson has the burden of convincing the Court that he is not a flight risk or a danger to the community. *United States v. Vance*, 851 F.2d 166, 169 (6th Cir. 1988). Notwithstanding the mandatory detention provisions of § 3143, a district court may release a defendant pending sentencing

4

"under appropriate conditions . . . if it is clearly shown that there are *exceptional reasons* why such person's detention would not be appropriate." 18 U.S.C. § 3145(c) (emphasis added).

Johnson cites to 18 U.S.C. § 3142(i), but that provision of the Bail Reform Act covers the situation where an individual is detained while awaiting trial—not where a person has been convicted by guilty plea and is awaiting sentencing. Although that section permits a judicial officer to temporarily release a defendant from federal custody if he or she "determines such release to be necessary for preparation of the person's defense or for another compelling reason," that provision does not apply to Johnson's situation. Here, Johnson must establish "exceptional reasons" warranting his release before sentencing; not a "compelling reason." *Compare* 18 U.S.C. § 3145(c) *with* 18 U.S.C. § 3142(i).

Statutory language aside, the Court recognizes the alarming scale and gravity of the COVID-19 pandemic and the serious health risks posed by the SARS-CoV-2 virus, particularly to those who may be especially vulnerable because of preexisting health conditions or age. In some situations, potential exposure to the virus in jails or prisons may provide "exceptional reasons" warranting revocation of an order detaining a defendant pending sentencing. To assess whether concerns about COVID-19 constitute "exceptional reasons" warranting temporary release in this case, the Court will consider a number of factors that are set out in greater detail below.

As a starting point, the Court takes note of a decision by another district court in this circuit, which itself relied on a decision from a district court in Kansas. *United States v. Smoot*, No. 2:19-CR-20 2020 WL 1501810, at *2 (S.D. Ohio Mar. 30, 2020) (citing *United States v. Clark*, No. 19-40068-01, 2020 WL 1446895, at *9 (D. Kan. Mar. 25, 2020)).

Both *Smoot* and *Clark* dealt with pretrial detention, in which courts must consider whether "compelling" reasons support release under § 3142(i), while this case involves a defendant awaiting sentencing, where the standard requires a finding of "exceptional" reasons under § 3143(a). The Court nonetheless finds the factors articulated in those two cases helpful to assessing whether release is warranted in this case, where the defendant has already been convicted and is awaiting sentencing.

The factors set out in *Smoot* and *Clark* are: (1) the original grounds for the defendant's detention; (2) the specificity of the defendant's stated COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *See Smoot*, 2020 WL 1501810 at *2; *Clark*, 2020 WL 1446895 at *9. While helpful, these factors do not explicitly require the Court to consider the actual conditions in the facility where the defendant is being held, and in particular the measures being taken there to address the potential outbreak of COVID-19.

Consequently, the Court will apply a modified set of factors based on those in *Smoot/Clark* in considering whether the defendant has set out exceptional reasons in favor of release:

(1) the original grounds for the defendant's pretrial detention;

(2) the nature, seriousness, and specificity of the defendant's stated COVID-19 concerns (e.g., underlying medical conditions, age, etc.);

(3) the conditions in the facility where the defendant is being held (e.g., social distancing measures, screening protocols for new prisoners, the number of prisoners diagnosed with COVID-19, and availability of appropriate medical treatment);

(4) whether conditions of release can be imposed to mitigate COVID-19 risks to the defendant and to the community.

Although Johnson has identified a preexisting health condition that warrants heightened concern about his potential exposure to COVID-19, the three other factors weight against revoking the Magistrate Judge's order of detention. Johnson has bronchial asthma, which he worries makes him especially vulnerable to becoming seriously ill as a result of COVID-19. ECF No. 348, PageID.2299. Indeed, although the government asserts that Johnson's asthma is "well controlled," the Centers for Disease Control and Prevention warn that "[p]eople with moderate to severe asthma may be at higher risk for getting very sick from COVID-19." ECF No. 354, PageID.2372; *People Who Are At Higher* Risk, CTRS. FOR DISEASE CONTROL AND PREVENTION (Apr. 2, 2020),

7

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. Yet the other factors—the original grounds for Johnson's detention, the conditions and practices in the place of confinement, as well as his proposed release plan's potential to mitigate Johnson's COVID-19 risks and the likelihood of increasing others' exposure—all weigh strongly against revoking the detention order.

The Court is primarily concerned that revoking detention and permitting Johnson to travel across the country to California (and back to Michigan for sentencing) will do little to mitigate his risk of contracting COVID-19. Johnson does not claim that any prisoner or correctional officer at his jail has been diagnosed with COVID-19. According to data collected by the State of Michigan, the whole of Clare County, where his facility is located, has only two confirmed COVID-19 cases. *Overall Confirmed COVID-19 Cases by County updated 4/8/2020*, MICHIGAN.GOV, https://www.michigan.gov/coronavirus/0,9753,7-406-98163-520743--,00.html (last accessed Apr. 9, 2020). San Bernardino County, where Johnson seeks permission to travel to, has 641 confirmed cases. *San Bernardino County COVID-19 Dashboard*, San BERNARDINO CTY., https://sbcph.maps.arcgis.com/apps/opsdashboard/index.html#/44bb35c804c44c8281da6d82ee602dff (last accessed Apr. 9, 2020).

Further, although cramped conditions in jails and prisons contribute to the spread of COVID-19, Clare County Sheriff Lieutenant Brian Dunn has described a number of health measures the county jail

8

is taking to reduce the risk of infection. ECF No. 354, PageID.2373. For example, all visitations and conferences with attorneys must now take place via videoconference. *Id.* All jail programming has also been suspended and detainees in separate jail cells are not sharing common spaces. *Id.* Further, the Sheriff's Office is limiting the number of new detainees, causing the current jail population to be far lower than is typical. *Id.* All new detainees are also being screened for symptoms of potential infection in an outdoor tent. *Id.* at PageID.2374. And jail staff are also doing "[e]xtra cleaning" and providing disinfectant and soap to detainees. *Id.* Detainees "are only in contact with detainees in their own cell" and no individuals have been transferred between cells since March 16. *Id.* Meals are delivered by corrections officers wearing gloves and eaten by detainees in their cells. *Id.* at PageID.2374–75. The facility where Johnson is being held is thus taking reasonable precautions to prevent or limit the spread of COVID-19 among detainees and staff. Johnson has not provided the Court with any information about his mode of transportation to California or his proposed living situation there that indicates release would mitigate Johnson's chances of contracting COVID-19.

Permitting Johnson to travel back-and-forth between Michigan and California could also increase the risk that members of the public will contract COVID-19, for example, if Johnson falls ill during the course of his travels and inadvertently transmits the virus to others in California

or Michigan. While both states have social restriction orders that should mitigate risk of flight if they are followed, both states also have a large number of diagnosed cases and the proposed release plan involves interstate travel. Johnson has likewise failed to explain how his living situation in California would permit him to practice social distancing, or to take other measures necessary to alleviate the risk of him contracting and spreading COVID-19 to his family or the broader public. At bottom, the Court is not satisfied that Johnson's proposed release plan will reduce the relevant risk to himself or the community. His proposal is not tailored to mitigate COVID-19 risks to himself and may in fact increase the likelihood that the illness will be transmitted to others.

Finally, the original grounds for Johnson's detention weigh against allowing him to await sentencing in California. At the initial detention hearing, Magistrate Judge Stafford determined by clear and convincing evidence that no condition of release could reasonably assure the safety of the community or defendant's subsequent appearance in court. ECF No. 9, PageID.1066. The offense Johnson pled guilty to—conspiracy to distribute controlled substances—is a serious one; it carries a 10-year mandatory minimum and a potential guideline sentence of between 17.5 and 18 years. ECF No. 337, PageID.2211. Because of his potentially lengthy sentence, and the fact that Johnson has no strong community or family ties in this district, the Court is also concerned that Johnson poses a flight risk. *See* ECF No. 9, PageID.1066–67. As part of the conspiracy

he pled guilty to, Johnson participated in extensive travel and worked with Mexican nationals. ECF No. 354, PageID.2378. Once relocated to Victorville, California Johnson would be within a three-hour's drive to the Mexican border. At bottom, Johnson's motion contains no new information that would allow the Court to conclude that he no longer poses any danger to the community or a flight risk.

## CONCLUSION

For these reasons, Manjaro Johnson's motion to revoke the Magistrate Judge's order of detention (ECF No. 348) is **DENIED**.

**SO ORDERED**

Dated: April 10, 2020      s/Terrence G. Berg
　　　　　　　　　　　　　　TERRENCE G. BERG
　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE